IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ERIK GARCIA, )<br><br>Plaintiff, )<br>)<br>vs. )<br>)<br>4615/50 NASA ONE, L.P., )<br>)<br>Defendant. ) | CIVIL ACTION<br><br>Case No. 4:24-CV-04038 |

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendant, 4615/50 NASA ONE, L.P., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendant's 4615/50 NASA ONE, L.P., failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff ERIK GARCIA (hereinafter "Plaintiff") is and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.      Plaintiff is disabled as defined by the ADA.

1

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, 4615/50 NASA ONE, L.P. (hereinafter "4615/50 NASA ONE, L.P.") is a domestic limited partnership that transacts business in the State of Texas and within this judicial district.

8.      Defendant, 4615/50 NASA ONE, L.P., may be properly served with process via its registered agent for service, to wit:  c/o Louis Macey, Registered Agent, 1717 St. James Place, Suite 118, Houston, TX  77056.

**FACTUAL ALLEGATIONS**

9.      On or about August 23, 2024, Plaintiff was a customer at "Volcano Room," a restaurant, bar and video game room located at 4650 E. NASA Pkwy., Seabrook, TX  77586,

referenced herein as "Volcano Room".  *See* photo of Plaintiff attached as Exhibit 1 during his August 23, 2024 visit as a customer of the Volcano room.

10.     Plaintiff again re-visited the Volcano Room as a customer for the 2nd time on August 24, 2024.  *See* receipt documenting the August 24, 2024, visit to the Volcano room as a customer attached as Exhibit 2.  See also, selfie documenting the August 24, 2024, visit to the Volcano Room attached as Exhibit 3.

11.     Defendant, 4615/50 NASA ONE, L.P., is the owner or co-owner of the real property and improvements that Volcano Room is situated upon and that is the subject of this action, referenced herein as the "Property."

12.     Defendant, 4615/50 NASA ONE, L.P., is responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendant, 4615/50 NASA ONE, L.P., and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.   *See* 28 CFR § 36.201(b).

13.     Plaintiff's access to Volcano Room and other businesses at the Property, located at 4650 E. NASA Pkwy., Seabrook, TX  77586, Harris County Property Appraiser's property identification number 0410080060066 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this

Complaint.

14.     Although Plaintiff's primary residence is 39 miles away.  Plaintiff visits his mother and his childhood home almost every weekend.  His mother lives only five miles away from the property.  When he visits his mother, Plaintiff and his mother often go out for dinner.

15.     Plaintiff has visited the Property twice before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer of the Volcano Room, to be a new customer of Hunsa Thai Kitchen, to determine if and when the Property is made accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

16.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

17.     Plaintiff travelled to the Property as a customer at least once before as a customer, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

18.     Although Plaintiff may not have personally encountered each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it

4

is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff

may encounter a different barrier to access identified in the Complaint in a subsequent visit as,

for example, one accessible parking space may not be available and he would need to use an

alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to

access identified in the Complaint must be removed in order to ensure Plaintiff will not be

exposed to barriers to access and legally protected injury.

19.     Plaintiff's inability to fully access the Property and the stores in a safe manner and

in a manner which inhibits the free and equal enjoyment of the goods and services offered at the

Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by

Congress and is historically viewed by Federal Courts as an injury in fact.

**COUNT I**
**VIOLATIONS OF THE ADA AND ADAAG**

20.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42

U.S.C. § 12101 *et seq*.

21.     Congress found, among other things, that:

(i)     some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)    historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)   discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers,

5

overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)   the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

22.   Congress explicitly stated that the purpose of the ADA was to:

(i)   provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)   provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

* * * * *

(iv)   invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

23.    The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

24.   The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

25.   The Property is a public accommodation and service establishment.

26.   Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to

implement the requirements of the ADA. 28 C.F.R. Part 36.

27.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

28.     The Property must be, but is not, in compliance with the ADA and ADAAG.

29.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

30.     Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Defendant, 4615/50 NASA ONE, L.P., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited

by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

32.     Defendant, 4615/50 NASA ONE, L.P., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, 4615/50 NASA ONE, L.P., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

33.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

i.      Due to the presence of stairs and a wooden fence, the Property lacks an accessible route from the sidewalk to the accessible entrance in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to utilize public transportation to access the public accommodations located on the Property.

ii.     In front of Unit 4640, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

iii.  In front of Unit 4640, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

iv.  In front of Unit 4640, the two accessible parking spaces have a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and are not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

v.  In front of Unit 4640, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

vi.  The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards.  There are 80 marked parking spaces at the Property, which require a minimum of four accessible parking spaces, but there are only two accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large

parking lot increases the likelihood of there not being an available accessible parking space.

vii.     At The Volcano Room, there is not at least 5% (five percent) of the exterior dining surfaces provided for consumption of food or drink that comply with Section 902.2 of the 2010 ADAAG standards, requiring appropriate knee and toe clearance complying with Section 306 of the 2010 ADAAG standards, positioned for a forward approach, in violation of Section 226.1 of the 2010 ADAAG standards.  If Plaintiff were to eat at the Property in the future, this barrier to access would prevent Plaintiff from using the dining surfaces currently present as Plaintiff's own feet would block Plaintiff's ability to access the dining surfaces.

viii.    Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**VOLCANO ROOM RESTROOMS**

ix.     Restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

x.  Due to a policy of keeping the trash receptacle under the sink, the restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

xi.  The height of the bottom edge of the reflective surface of the mirror in the bathroom is above the 40-inch maximum height permitted by Section 603.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to properly utilize the mirror in the restroom since Plaintiff is sitting in a wheelchair and is lower than a person standing up.

xii.  The accessible toilet stall door swings into the clear floor space required by the stall and violates Section 604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for the Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

xiii.  The accessible toilet stall lacks the required size and turning clearance as required in Section 604.8.1.1 of the 2010 ADAAG standards.  This barrier to access would make it difficult for Plaintiff's wheelchair to fit into and maneuver within the toilet stall.

11

xiv.   The toilet paper dispenser serving the accessible toilet is not positioned seven to nine inches in front of the toilet and therefore is in violation of Section 604.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to utilize the toilet due to the fact the toilet paper dispenser is at an improper distance from the toilet, given Plaintiff's disability, Plaintiff would not be able to get up and reach the toilet paper.

xv.   The required grab bars/handrails adjacent to the commode are missing and violate Section 604.5 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

34.   The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

35.   Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

36.   The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

37.   All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

38.   Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

39.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, 4615/50 NASA ONE, L.P., has the financial resources to make the necessary modifications as the appraised value of the Property is $2,944,852.00.

40.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

41.     Upon information and good faith belief, the Property has been altered since 2010.

42.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

43.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, 4615/50 NASA ONE, L.P., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

44.     Plaintiff's requested relief serves the public interest.

45.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, 4615/50 NASA ONE, L.P.

46.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, 4615/50 NASA ONE, L.P., pursuant to 42 U.S.C. §§ 12188 and 12205.

47.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, 4615/50 NASA ONE, L.P., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendant, 4615/50 NASA ONE, L.P., in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendant, 4615/50 NASA ONE, L.P., from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendant, 4615/50 NASA ONE, L.P., to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the circumstances.

Dated: October 21, 2024.          Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com
ATTORNEYS FOR PLAINTIFF

14